ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| **ESTADO LIBRE ASOCIADO DE PUERTO RICO** DEMANDANTE(S)-APELANTE(S) | | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de **SAN JUAN** |
| V. | **KLAN202400991** | Caso Núm. **K EF2016-0010 (1002)** |
| **SUCESIÓN JESÚS RIVERA QUIÑONES** DEMANDADA(S)-APELADA(S) | | Sobre: Expropiación Forzosa |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos.

*Barresi Ramos*, juez ponente

### S E N T E N C I A

En San Juan, Puerto Rico, hoy día 20 de junio de 2025.

Comparece ante este Tribunal de Apelaciones, el **ESTADO LIBRE ASOCIADO DE PUERTO RICO** (**ELA**) mediante *Escrito de Apelación* incoado el 4 de noviembre de 2024. En su recurso, nos solicita que revisemos la *Sentencia Parcial* pronunciada el 31 de julio de 2023 por el Tribunal de Primera Instancia (TPI), Sala Superior de San Juan.[1] En dicha decisión, el foro apelado declaró no ha lugar la *Solicitud de Sentencia Sumaria* presentada el 23 de marzo de 2023 por el **ELA** y ha lugar la *Oposición a que se Dicte Sentencia Sumaria* presentada el 12 de junio de 2023 por la **SUCESIÓN JESÚS RIVERA QUIÑONES** (**SUCESIÓN RIVERA QUIÑONES**).

Exponemos el trasfondo fáctico y procesal que acompañan a la presente controversia.

---

[1] Este dictamen judicial fue notificado y archivado en autos el 2 de agosto de 2023. Apéndice del *Escrito de Apelación*, págs. 534- 550.

Número Identificador:
SEN2025_____

- I -

El 10 de febrero de 2016, el **ELA** interpuso una *Petición* sobre expropiación forzosa concerniente a una finca localizada en la Calle Santa Cecilia en el municipio de San Juan.[2] El fin público que persiguió el **ELA** consistió en mejorar las condiciones socioeconómicas de la comunidad especial Chícharo Seboruco, así como fomentar el desarrollo económico y la eventual creación de empleos.

Tiempo después, el 10 de marzo de 2017, la **Sucesión Rivera Quiñones,** como parte con interés, compareció mediante *Moción Impugnando el Fin Público de la Petición de Expropiación* argumentando, entre otras cosas, que la petitoria está extremadamente relacionada con el caso K AC2009-1153 sobre expropiación a la inversa en la cual las partes llegaron a un acuerdo de transacción contenida en la *Sentencia* de 18 de octubre de 2010; y la propiedad objeto de expropiación está ubicada en una Comunidad Especial cuyos directivos no dieron autorización para realizar la expropiación ni permitieron el uso de sus fondos.[3] El 5 de abril de 2017, el **ELA** presentó *Moción en Cumplimiento de Orden y en Oposición a Moción Impugnando el Fin Público de la Petición de Expropiación.*[4] Admitió que la expropiación surgió a raíz de una estipulación en el caso *Castro Business Enterprises Inc. v. E.L.A.,* K AC2009-1153, en la cual se convino que el **ELA** adquiriría por compraventa o expropiación la parcela de terreno en la cual se encuentra la propiedad de la **Sucesión Rivera Quiñones**, sostuvo que existe una determinación vinculante y aplica al fin público de la presente petición de expropiación. El 27 de abril de 2017, la **Sucesión Rivera Quiñones** presentó *Réplica a Moción en Cumplimiento de Orden y en Oposición a Moción [Impugnando] el Fin Público de la Petición de Expropiación.*[5] En esta argumentan que la **Sucesión Rivera Quiñones** no participó y no fue parte

---

[2] Apéndice del *Escrito de Apelación,* págs. 1- 27.
[3] *Íd.,* págs. 58- 62.
[4] *Íd.,* págs. 65- 76. Acompañó copia de la *Resolución* fechada 17 de mayo de 2012.
[5] *Íd.,* págs. 79- 85.

del caso anterior, por lo que, no podía impugnar la *Resolución* emitida por el foro primario.

Una vez levantada la paralización por PROMESA, el 7 de octubre de 2022, se expidió una *Orden* que, entre otras cosas, reactivó el caso y requirió a las partes presentar una moción conjunta proponiendo el plan de trabajo.[6]

Así pues, el 23 de marzo de 2023, el **ELA** presentó una *Solicitud de Sentencia Sumaria* acompañada de su prueba documental.[7] El 12 de junio de

---

[6] Apéndice del *Escrito de Apelación,* págs. 135- 137. El día 5 de julio de 2017, mediante *Sentencia Administrativa* se ordenó la paralización de los procedimientos hasta tanto una de las partes certificara que se haya levantado la paralización por la conclusión del procedimiento de quiebras o una solicitud al amparo de la Sección 362(d) del Código de Quiebras.

[7] *Íd.,* págs. 147- 499. El documento tiene anejado: (i) *Petición* de 27 de junio de 2007; (ii) *Exhibit A*; (iii) *Moción de Adquisición y Entrega Material de la Propiedad* de 27 de junio de 2007; (iv) *Declaración para la Adquisición y Entrega Material de la Propiedad* de 26 de junio de 2007; (v) Proyecto de Apéndice del Escrito de *Apelación ,*: (vi) *Orden* de 22 de agosto de 2007; (vii) *Moción en Cumplimiento de Orden* presentada el 9 de noviembre de 2007; (viii) *Moción para Asumir Representación Legal y de Otros Extremos* presentada el 10 de septiembre de 2008; (ix) *Moción Solicitando el Desistimiento* presentada el 13 de noviembre de 2008; (x) *Sentencia* de 17 de diciembre de 2008; (xi) *Segunda Sentencia Enmendada (Parcial)* de 27 de marzo de 2009; (xii) *Demanda* de 22 de septiembre de 2009; (xiii) *Emplazamiento* expedido el 22 de septiembre de 2009; (xiv) Fotos; (xv) *Moción Sometiendo Estipulación por Transacción* de 4 de octubre de 2010; (xvi) Misiva de 24 de agosto de 2010; (xvii) Comunicación de 27 de septiembre de 2010; (xviii) Carta de 23 de septiembre de 2010: (xix) *Resolución Corporativa* de 13 de septiembre de 2010; (xx) *Moción Sometiendo Estipulación por Transacción* de 4 de octubre de 2010; (xxi) *Sentencia* de 18 de octubre de 2010; (xxii) *Resolución* de 17 de mayo de 2012; (xxiii) *Moción Solicitando el Pago Final de la Justa Compensación en Cumplimiento de la Sentencia y de Otros Extremos* de 26 de octubre de 2011; (xxiv) Carta de 31 de marzo de 2011; (xxv) Misiva de 11 de agosto de 2011; (xxv) Comunicación de 11 de agosto de 2011; (xxvi) *Memorando de Derecho sobre Fin Público* de 3 de abril de 2012; (xxvii) *Moción en Apoyo del Cumplimiento de la Sentencia y del Pago de la Justa Compensación* de 12 de abril de 2012; (xxviii) *Resolución* de 17 de mayo de 2012; (xxix) *Segunda Moción Solicitando Cumplimiento de Sentencia y de Orden* de 11 de abril de 2013; (xxx) *Segunda Moción Solicitando el Cumplimiento de la Sentencia, de la Resolución y el Pago de los Daños, Costas y Honorarios de Abogado* de 3 de septiembre de 2013; (xxxi) *Moción Solicitando el Cumplimiento de la Sentencia y Órdenes del Tribunal; la Imposición de Sanciones y Citación por Desacato* de 3 de octubre de 2013; (xxxii) *Nueva Moción Solicitando el Cumplimiento de la Sentencia e Imposición de Sanciones* de 9 de diciembre de 2012; (xxxiii) *Memorando de Derecho* de 23 de mayo de 2014; (xxxiv) Certificación de 21 de febrero de 2014; (xxxv) *Resolución Corporativa* de 24 de junio de 2013; (xxxvi) *Reglamento Interno del Consejo Asesor para el Desarrollo de las Comunidades Especiales de la Oficina para el Financiamiento Socioeconómico y la Gestión* de 10 de octubre de 2001; (xxxvii) *Breve Réplica a Memorando de Derecho de ELA y Suplementaria a Moción Sosteniendo la Validez de la Expropiación Estipulada* de 30 de mayo de 2014; (xxxviii) *Moción en Cumplimiento de Orden* de 5 de diciembre de 2014; (xxxix) *Resolución* de 28 de enero de 2015; (xl) *Resolución* de 9 de abril de 2019; (xli) *Moción de Reconsideración y Aclaración* de 25 de abril de 2019; (xlii) *Resolución Enmendada* de 29 de mayo de 2019; (xliii) Correo electrónico de 22 de febrero de 2021; (xliv) *Sentencia* de 4 de febrero de 2021 (KLCE201900866); (xlv) *Resolución* de 18 de junio de 2021 (CC-2021-0346); (xlvi) *Resolución* de 4 de febrero de 2022 (CC-2021-0346); (xlvii) *Resolución* de 22 de octubre de 2021 (CC-2021-0346); (2xlviii) *Petición* de 10 de febrero de 2016; (xlix) Exhibit A; (l) *Moción para la Adquisición y Entrega Material de la Propiedad* de 10 de febrero de 2016; (li) *Declaración para la Adquisición y Entrega Material de la Propiedad* de 8 de febrero de 2016; (lii) *Resolución* de marzo de 2017; (liii) *Moción Asumiendo Representación Legal* de 10 de marzo de 2017; (liv) *Moción Impugnando el Fin Público de la Petición de Expropiación* de 10 de marzo de 2017; (lv) *Moción en Cumplimiento de Orden y en Oposición a Moción Impugnando el Fin Público de la Petición de Expropiación* de 6 de abril de 2017; (lvi) Resolución de 17 de mayo de 2012; (lvii) *Aviso de Paralización de los Procedimientos por Virtud de la Presentación de la Petición Presentada por el Gobierno de Puerto Rico bajo el Título III de Promesa* de 24 de mayo de 2017; y (lviii) *Sentencia Administrativa* de 5 de junio de 2017.

2023, la **SUCESIÓN RIVERA QUIÑONES** presentó su *Oposición a que se Dicte Sentencia Sumaria* en la cual interpeló que se declarara no ha lugar el petitorio sumario promovido por el **ELA** y determinará que no existe un fin público legítimo en este procedimiento.[8] El 5 de julio de 2023, el **ELA** presentó una *Moción para que se de por Sometida la Solicitud de Sentencia Sumaria Presentada por el ELA*.[9] Varios días después, el 20 de julio de 2023, la **SUCESIÓN RIVERA QUIÑONES** presentó *Oposición a que se dé por Sometida la Solicitud de Sentencia Sumaria Presentada por el ELA*.[10] El 31 de julio de 2023, se dictó la *Sentencia Parcial* apelada elucidando, en lo pertinente, que "[s]urge de la prueba presentada por la parte con interés, el FPCE no autorizó la expropiación en perjuicio de terceros en el caso K AC2009-1153. De hecho, el FPCE desautorizó en su totalidad el acuerdo transaccional en el mencionado caso. Asimismo, no es posible pasar por alto que la propia peticionaria impugnó el fin público de la presente expropiación en el caso K AC2009-1153. En aquella ocasión[,] el Estado alegó que la adquisición de la propiedad objeto del presente pleito mediante expropiación es contraria a derecho, nula y en violación del debido proceso de ley[...]". En la misma, se formuló nueve (9) hechos pertinentes sobre los cuales no hay controversia sustancial, a saber:

1. El 22 de septiembre de 2009, CBE presentó una demanda de expropiación a la inversa contra el ELA en el caso KAC2009-1153, en la que CBE alegó que obtuvo autorización y permiso de la Junta de Planificación para el desarrollo de un negocio "Cash & Carry", específicamente, la construcción de un almacén y estacionamiento.
2. Para el desarrollo de su proyecto CBE adquirió mediante compraventa nueve propiedades para construir un almacen y cierta cantidad de estacionamientos.
3. El Estado ocupó físicamente dos de los solares que estaban destinados para estacionamientos, en los cuales construyó un Centro Comunal, sin presentar la acción de expropiación correspondiente ni pagar una justa compensación a CBE.
4. CBE y el Estado acordaron transigir todas las alegaciones de la demanda en el caso KAC2009-1153, mediante una estipulación en la que pactaron, entre otras cosas, lo siguiente: "[E]l DTOP

---

[8] Apéndice del *Escrito de Apelación,* págs. 500- 523. Este escrito tiene adjuntado: (i) Certificación de 21 de febrero de 2014; (ii) Resolución Corporativa 2013-025 de 24 de junio de 2013; (iii) *Reglamento Interno de la Junta de Directores del Fideicomiso Perpetuo para las Comunidades Especiales*.
[9] Apéndice del Escrito de *Apelación,* págs. 524- 529.
[10] *Íd.,* págs. 530- 533.

y el ELA se obligaron a adquirir mediante compraventa o expropiación, la propiedad [...] luego ser traspasada a la parte demandante libre de cargas y gravámenes mediante el pago por esta última del valor de tasación de dicha propiedad, a la fecha de la Sentencia".

5. La estipulación dispone que se otorga como parte del deber del Estado de reparar los daños ocasionados a CBE por las acciones relacionadas a la construcción del centro comunal, y en particular, se otorga con el fin público de mejorar la infraestructura del sector y crear actividad económica.

6. La estipulación fue avalada por el secretario del Departamento de Transportación y Obras Públicas (DTOP) y por el Comité de Transacciones del Departamento de Justicia. En ningún momento se comprometieron los fondos del Fideicomiso Perpetuo para Comunidades Especiales (FPCE).

7. Según surge de una Certificación emitida el 21 de febrero de 2014 por el FPCE, la Junta de Directores no autorizó el desembolso ni la expropiación en perjuicio de terceros, con relación al caso KAC2009-1153. Además, la Junta de Directores desautorizó, mediante Resolución 2013-023, el acuerdo transaccional en el caso KAC2009-1153.

8. La propiedad expropiada en el presente pleito pertenece a la Sucesión Rivera– Paniagua, tiene una cabida superficial de 165 metros cuadrados, y está localizada en la Calle Santa Cecilia, Comunidad Chícharo Seboruco, Villa Palmeras, Santurce, Puerto Rico.

9. Una de las propiedades objeto de la estipulación en el caso KAC2009-1153, la cual el ELA se comprometió a adquirir mediante compraventa o expropiación, es la propiedad que se expropia en el presente pleito.

Inconforme con ese proceder, el 17 de agosto de 2023, el **ELA** presentó *Moción de Reconsideración*.[11] El 30 de agosto de 2023, CASTRO BUSINESS ENTERPRISES, INC. (CASTRO BUSINESS) presentó *Moción Solicitando el Auxilio del Tribunal*.[12]

Más tarde, el 27 de septiembre de 2023, se celebró una audiencia sobre el estado procesal del caso.[13] El 27 de octubre de 2023, la **SUCESIÓN RIVERA QUIÑONES** presentó *Moción de Réplica en Cumplimiento con Orden*.[14] Alegó que la *Sentencia Parcial* debe ser una *Sentencia Final*, dado que al determinarse que no existe fin público, el tribunal *a quo* no tiene jurisdicción para atender lo concerniente a la justa compensación.

Subsiguientemente, el 29 de agosto de 2024, el foro apelado intimó *Resolución* declarando no ha lugar al petitorio de reconsideración.[15]

---

[11] Apéndice del Escrito de *Apelación*, págs. 551- 579.
[12] *Íd.*, págs. 580- 582.
[13] *Íd.*, págs. 583- 584.
[14] *Íd.*, págs. 585- 595.
[15] *Íd.*, págs. 596- 603.

En desacuerdo, el 4 de noviembre de 2024, el **ELA** acudió ante este Tribunal de Apelaciones mediante *Escrito de Apelación* señalando el(los) siguiente(s) error(es):

> Erró el foro apelado al determinar que la petición de expropiación forzosa presentada por el Estado carece de un fin público y dictar sentencia sumaria a favor de la parte con interés.

El 7 de noviembre de 2024, pronunciamos *Resolución* concediendo, entre otras cosas, un término de treinta (30) días a la **Sucesión Rivera Quiñones** para presentar su alegato en oposición. En cumplimiento, el 13 de diciembre de 2024, la **Sucesión Rivera Quiñones** presentó su escrito intitulado *Alegato de la Parte Apelada*.

Evaluado concienzudamente el expediente del caso, y contando con el beneficio de la comparecencia de las partes, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

- II -

- A – *Sentencia Sumaria*

La *sentencia sumaria* es un mecanismo procesal disponible para adjudicar controversias sin la celebración de un juicio.[16] Su propósito o finalidad es propiciar la solución justa, rápida y económica de los litigios civiles que no presentan controversias genuinas de hechos materiales, y en los cuales sólo resta dirimir una controversia de derecho.[17]

Este mecanismo se encuentra instituido por la Regla 36 de las de Procedimiento Civil de 2009.[18] Esta prescribe que cualquiera de las partes "podrá presentar [...] una moción fundamentada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte

---

[16] *Cruz, López v. Casa Bella y otros*, 2024 TSPR 47, resuelto el 8 de mayo de 2024; *Birriel Colón v. Econo y otro*, 213 DPR 80 (2023); *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964, 979 (2022).

[17] *Id.*

[18] 32 LPRA Ap. V, R. 36.3 (a); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414 432 (2013).

sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación solicitada".[19]

Lo anterior implica que, la parte promovente debe demostrar que no existe *controversia sustancial* sobre algún hecho material, pues la *sentencia sumaria* solo debe dictarse en casos claros, cuando el tribunal tenga ante sí la verdad sobre todos los hechos pertinentes.[20] Para ello, debe desglosar en párrafos debidamente numerados y, para cada uno de ellos, debe especificar la página o el párrafo de la declaración jurada u otra prueba admisible en evidencia que lo apoya.[21] La jurisprudencia interpretativa ha definido que "[u]n hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable".[22]

Por su parte, quien se opone a que se dicte *sentencia sumaria* está obligado a controvertir la prueba presentada, contestando de forma detallada y específica aquellos hechos pertinentes para demostrar que existe una *controversia real y sustancial* que debe dilucidarse en juicio.[23] Entre la evidencia que puede presentar, están las siguientes: "certificaciones, documentos públicos, admisiones de la parte contraria, deposiciones, contestaciones a interrogatorios, declaraciones juradas o affidávits, y hasta prueba oral".[24] Es decir, no basta con presentar meras afirmaciones. Resulta insuficiente para derrotar una solicitud de *sentencia sumaria* una declaración jurada que meramente exponga conclusiones reiteradas de las alegaciones de la demanda y hechas sin conocimiento personal de los hechos.[25] Empero, será el análisis del derecho aplicable y de la existencia de alguna *controversia sustancial de hechos materiales* lo que determinará si procede dictar

---

[19] 32 LPRA Ap. V, R. 36.1 y 36.2. *Acevedo y otros v. Dpto. de Hacienda*, 212 DPR 335 (2023).
[20] *Oriental Bank v. Caballero García*, 212 DPR 671 (2023).
[21] Regla 36.3(a) de las de Procedimiento Civil de 2009, *supra*; *SLG Zapata-Rivera v. J.F. Montalvo, supra*.
[22] *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981 (2023).
[23] *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 336 (2021); *Ramos Pérez v. Univisión*, 178 DPR 200, 214. (2010).
[24] *Acevedo y otros v. Depto. Hacienda y otros, supra*, citando a R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed., San Juan, LexisNexis, 2017, pág. 318. Véase, además, la Regla 36.5 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.5.
[25] *Ramos Pérez v. Univisión, supra*, págs. 215- 216.

sentencia sumariamente, y no el que la parte contraria deje de oponerse a la solicitud, o lo haga defectuosamente.[26]

Al evaluar la procedencia de la solicitud de *sentencia sumaria* el tribunal **analizará los documentos que acompañan la moción de** *sentencia sumaria*, **los documentos incluidos con la moción en oposición y aquellos que obren en el expediente del tribunal**.[27] Por ello, "[t]oda inferencia que se haga a base de los hechos y documentos que obren en los autos, debe tomarse desde el punto de vista más favorable al que se opone a la solicitud de sentencia sumaria".[28] Más aún, el tribunal no tiene que considerar los hechos que no estén debidamente enumerados y no hagan referencia a los párrafos o páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establezcan.[29] Tampoco tiene la obligación de considerar cualquier parte de una declaración jurada o de otra prueba admisible en evidencia a la cual no se haya hecho referencia en la relación de hechos.[30]

No obstante, "cualquier duda no es suficiente para derrotar una moción de sentencia sumaria; por el contrario, tiene que ser una duda que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes".[31] Por tanto, "[existe] una controversia real cuando la prueba ante el tribunal es de tal naturaleza que un juzgador racional de los hechos podría resolver a favor de la parte promovida".[32]

La parte promovente puede prevalecer por la vía sumaria si presenta prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. En cambio, la parte promovida puede derrotar la moción de tres (3) maneras diferentes: (1) si establece una controversia real de hechos sobre

---

[26] *Ortiz v. Holsum*, 190 DPR 511, 525 (2014).
[27] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 913 (1994). (énfasis nuestro).
[28] *ELA v. Cole*, 164 DPR 608, 626 (2005); *Mgmt. Adm. Servs. Corp. v. E.L.A.*, 152 DPR 599, 610-611 (2000).
[29] Regla 36.3(d) de las de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36.3(d). Véase, además, *SLG Zapata-Rivera v. J.F. Montalvo, supra*, pág. 433.
[30] *Íd*.
[31] *Ramos Pérez v. Univisión, supra*, pág. 214.
[32] *Íd*.

uno de los elementos de la causa de acción de la parte promovente; (2) si presenta prueba que apoye una defensa afirmativa; o (3) si presenta prueba que establezca una controversia sobre la credibilidad de los testimonios jurados que presentó la parte promovente.[33] Esta parte no puede descansar en meras alegaciones sino que viene obligada a contestar en forma tan detallada y específica como lo haya hecho la parte promovente.[34] Ahora bien, la falta de oposición a la moción de *sentencia sumaria* no conlleva la concesión automática del remedio solicitado, si existe una controversia legítima sobre un hecho material, o si la sentencia no procede conforme al derecho sustantivo aplicable.[35] Del mismo modo, el tribunal puede dictar *sentencia sumaria* de naturaleza interlocutoria para resolver cualquier controversia que existe entre las partes y sea separable de las controversias restantes.[36]

"[N]o es aconsejable utilizar la moción de sentencia sumaria en casos en donde existe controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de la credibilidad es esencial y está en disputa".[37] Empero, "la regla no excluye tipos de casos y realmente puede funcionar en cualquier contexto sustantivo".[38]

La Regla 36.4 de las de Procedimiento Civil de 2009 delimita las instancias en que el Tribunal de Primera Instancia está obligado a consignar en su dictamen los hechos materiales sobre los cuales no hay controversia, y cuáles hechos materiales halló controvertidos; a saber: (1) cuando no se dicta *sentencia sumaria* sobre la totalidad del pleito; (2) cuando no se concede todo el remedio solicitado; y (3) cuando se deniega la moción de *sentencia sumaria*.[39] Estas tres (3) instancias conllevan la celebración de una audiencia en su fondo. En estos casos, la consignación en la *sentencia sumaria* de los

---

[33] *Íd.*, pág. 217.
[34] Regla 36.3 (c) de las de Procedimiento Civil de 2009.
[35] *Ortiz v. Holsum de PR, Inc., supra*, pág. 525 (2014); *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 137 (2015) (Estrella Martínez, opinión disidente).
[36] 32 LPRA Ap. V, R. 36.3(e).
[37] *Ramos Pérez v. Univisión PR, Inc., supra,* pág. 219.
[38] *Íd.*, pág. 220.
[39] 32 LPRA Ap. V, R. 36.4. *Pérez Vargas v. Office Depot,* 203 DPR 687, 697 (2019).

hechos materiales sobre los cuales no hay controversia sustancial hace innecesario presentar evidencia o prueba sobre estos durante el juicio.[40]

Dicho esto, este Tribunal de Apelaciones se encuentra en la misma posición que el Tribunal de Primera Instancia al momento de revisar [denegaciones] o concesiones de mociones de *sentencia sumaria*.[41] Esto significa que, al evaluar la solicitud de *sentencia sumaria*, al igual que el foro primario, debemos aplicar los criterios de la Regla 36 de las de Procedimiento Civil de 2009 y su jurisprudencia interpretativa. Ello supone examinar el expediente de la manera más favorable hacia la parte que se opuso a la solicitud de *sentencia sumaria*, llevando a cabo todas las inferencias permisibles a su favor. Como resultado, tenemos el deber de revisar que tanto la moción de *sentencia sumaria* como su oposición cumplan con los requisitos de forma instituidos en la Regla 36 de las de Procedimiento Civil de 2009.[42]

En esencia, si el foro primario **acogió la moción** y dictó sentencia sumariamente, nos corresponderá revisar que, efectivamente si existen hechos materiales en controversia.[43] De no existir, procederemos entonces a revisar de *novo* si el Tribunal de Primera Instancia adjudicó correctamente el derecho. Por el contrario, si el foro primario denegó la moción de *sentencia sumaria* por entender que existían hechos materiales en controversia, "**el tribunal apelativo solo revisa si el foro primario abusó de su discreción**".[44] En palabras sencillas, los tribunales revisores estamos limitados a: (1) considerar los documentos que se presentaron ante el foro de instancia; (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales; y (3) comprobar si el derecho se aplicó de forma correcta.[45]

---

[40] *Íd.*

[41] *Rosado Reyes v. Global Healthcare*, 205 DPR 796, 809 (2020); *Rivera Matos et al. v. Triple-S et al.,* 204 DPR 1010, 1025 (2020); *Meléndez González et al. v. M. Cuebas, supra*, pág. 118.

[42] *Birriel Colón v. Supermercado Los Colobos, supra.*

[43] *Rivera Matos et al. v. Triple S et al., supra*, pág. 1025.

[44] *Meléndez González et al. v. M. Cuebas, supra*, pág. 116. (énfasis nuestro).

[45] *Birriel Colón v. Supermercado Los Colobos, supra*, pág. 5; *Meléndez González et al. v. M. Cuebas, supra*, págs. 114– 116.

## - B – *Expropiación Forzosa*

Nuestra Constitución reconoce el derecho al disfrute de la propiedad como un derecho fundamental.[46] "El derecho al disfrute de la propiedad...está supeditado al poder inherente del Estado para establecer restricciones sobre las propiedades privadas en favor del bienestar común".[47] Razonablemente, el Estado no puede tomar la propiedad privada para uso público a no ser a cambio de justa compensación y conforme a la ley.[48] Empero, como soberano, el Estado puede "adquirir el dominio de una propiedad sita dentro de sus límites territoriales...para fines públicos" mediante la *expropiación forzosa*.[49]

De otro lado, en el ejercicio del poder de dominio eminente del Estado, existen casos excepcionales en los que el Estado puede ocupar o incautar un derecho real sin haber iniciado el procedimiento judicial de *expropiación forzosa* y sin haber consignado el pago de la justa compensación.[50] En esa dirección, existe la acción de *expropiación a la inversa*, mediante la cual "se garantiza el cumplimiento del Estado con las disposiciones constitucionales que establecen que nadie será privado de su propiedad sin un debido proceso de ley y sin haber mediado compensación".[51] A esos fines, el término *incautación* se refiere a las instancias en las que el gobierno se apodera de la propiedad privada para uso público y la ocupa físicamente.[52]

Asimismo, se ha definido como "cualquier privación o interferencia sustancial en el dominio o el disfrute de una cosa" o "[c]ualquier interferencia sustancial con la propiedad que destruya o disminuya su valor, o por la cual

---

[46] Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1.
[47] *ELA v. El Ojo de Agua Development*, 205 DPR 502, 518 (2020).
[48] Art. II, Sec. 9, Const. ELA, LPRA, Tomo 1.
[49] *Adm. Terrenos v. Ponce Bayland*, 207 DPR 586 (2021); *ELA v. El Ojo de Agua Development*, *supra*.
[50] *Amador Roberts et als. v. ELA*, 191 DPR 268, 279 (2014).
[51] *Íd.*
[52] R. Serrano Geyls, *Derecho Constitucional de Estados Unidos y Puerto Rico*, Programa de Educación Jurídica Continua de Universidad Interamericana de Puerto Rico, 1988, reimpreso 2013, Vol. II, en la pág. 870.

el derecho del dueño a usarla o disfrutarla sea sustancialmente menoscabado o destruido".[53]

Del mismo modo, la Sección 5 (a) de la *Ley General de Expropiación Forzosa*, advierte expresamente la facultad que ostentan los municipios para instar procesos de *expropiación forzosa*.[54] Igualmente, el Código Municipal de Puerto Rico instituye que los municipios podrán instar procesos de *expropiación forzosa* dentro de sus límites territoriales. Específicamente, el Artículo 2.018 inciso (a) (2) (v) y (vi) del Código Municipal, instaura que los municipios pueden ocupar, demoler o causar perjuicios a la propiedad privada, para ser utilizada para los siguientes fines:

> (v) **cuando sea favorable al interés público**, que las estructuras abandonadas o solares abandonados, yermos o baldíos en las comunidades, que estén en estado de abandono, constituyendo o no estorbos públicos, sean objeto de expropiación por el municipio donde ubiquen, con el propósito de transferir su titularidad a personas, corporaciones con o sin fines de lucro, desarrolladores, contratistas y cualesquiera otros que tengan un legítimo interés en mantener esas propiedades en condiciones;
> (vi) Cualquier otro propósito de utilidad que sea declarado así por la Legislatura Municipal conforme a las facultades otorgadas a los municipios por este Código y en cumplimiento con esta ley. [55]

Concretamente, el Artículo 4.007 del *Código Municipal* de Puerto Rico concierta como política pública el "[r]estaurar y ocupar las estructuras, que, por sus condiciones, constituyen una amenaza a la salud, la seguridad y bienestar de los residentes de las comunidades donde están situadas; y [f]ortalecer la seguridad en esas comunidades y propiciar la mejor calidad de vida de los residentes".[56]

Empero, es fundamental que: (1) el objeto expropiado debe destinarse a un fin público; (2) el Estado pague la justa compensación por el bien expropiado a la parte interesada; y (3) garantizar un debido proceso de ley, dado que, existe un derecho propietario.[57] Así, resulta necesario que al ser cuestionado por la parte interesada el fin público que el Estado utilice para

---

[53] *Íd.*, pág. 887.
[54] Ley de 12 de marzo de 1903, según enmendada. 32 LPRA § 2907.
[55] (énfasis nuestro).
[56] 21 LPRA § 7631 (c) y (d).
[57] *Culebra Enterprise Corp. v. ELA*, 143 DPR 935 (1997).

justificar la expropiación sea [claramente] establecido.[58] En ese contexto, la jurisprudencia concluye expresamente que para cumplir con el peso probatorio, el Estado puede descansar en los documentos que presentó al tribunal como indicativos del fin público para el cual se expropia, o presentar ante el foro primario aquella evidencia adicional que estime que respalda el uso público del terreno expropiado.[59] Por consiguiente, en resumidas cuentas, el fin público que persigue el Estado puede ser satisfecho mediante alegaciones específicas y bien hechas sobre la finalidad de la *expropiación forzosa* con la documentación e información que así lo evidencia, aunque en otras ocasiones, podría requerirse la celebración de vistas evidenciarias para desfilar prueba.[60]

## - III -

Esencialmente, el **ELA** en su escrito de apelación, punteó que es un hecho incontrovertido que el procedimiento sobre *expropiación forzosa* tiene como finalidad pública cumplir los propósitos de fomentar el desarrollo económico de la comunidad especial en la que ubica la propiedad y crear empleos. Asimismo, subrayó que tales propósitos son consistentes con la Ley Núm. 1 de 1 de marzo de 2001, conocida como la *Ley para el Desarrollo Integral de las Comunidades Especiales de Puerto Rico.* Añadió que el proceso de *expropiación forzosa* tiene el objetivo de reparar el daño que le ocasionó al desarrollador de un proyecto cuando el Estado construyó por error una obra pública en unos terrenos pertenecientes a este que no eran los que estaban destinados para realizar esa obra. De igual forma, ante las alegaciones de la **Sucesión Rivera Quiñones**, el Estado acentuó, que no objetaron la justa compensación consignada en el foro primario, por lo que, debe entenderse que renunciaron en cuanto a ese particular.[61] Replicó que junto a la **Sucesión Rivera Quiñones** acordaron transigir– en su momento– las reclamaciones

---

[58] *Mun. de Guaynabo v. Adquisición M,* 180 DPR 206, 220 (2010).

[59] *Íd.*, pág. 228.

[60] *Íd.*

[61] Surge del récord, que el **ELA** le ofreció a la **Sucesión Rivera Quiñones** la compensación de $134,000.00 en concepto de justa causa para la *expropiación forzosa* y el pleno dominio de la propiedad. De hecho, tal cantidad fue consignada ante el foro primario.

de la *Petición*. A esos efectos, el **ELA** argumentó que se equivocó el foro apelado al concluir que la *Petición* sobre *expropiación forzosa* instada carece de un fin público y, en consecuencia, dictó *Sentencia Parcial* a favor de la parte con interés. En ese sentido, discutió que nuestro Máximo Foro ha reiterado que "nada impide que se utilice el mecanismo de sentencia sumaria en reclamaciones que requieran elementos subjetivos o de intención cuando los documentos a ser considerados en la solicitud de sentencia sumaria surgen la inexistencia de controversia en torno a los hechos materiales".[62]

Por el contrario, la **Sucesión Rivera Quiñones** coligió que la causa de acción sobre *expropiación forzosa* solamente persigue el propósito de cumplir con el pago a una *Sentencia por Estipulación* promulgada luego de un acuerdo de transacción. Del mismo modo, asentó su posición expresando que el **ELA** no alcanzó a comprobar el fin público de su petición sobre *expropiación forzosa*, por lo que, sencillamente fue un subterfugio para el cumplimiento del acuerdo transaccional alcanzado en el caso K-AC2009-1153. A la par, indicó que no existe un proyecto público y un plan de desarrollo autorizado y organizado que justifique la expropiación. Igualmente, resaltó que no surge del expediente garantía de los presuntos empleos que se crearían y CBE se comprometió a brindarle prioridad a los miembros de la comunidad.

Como cuestión de umbral, precisa señalar que, a tenor con la normativa atinente a la revisión de *sentencia sumaria*, y luego de justipreciar concienzudamente los respectivos escritos presentados, hallamos que: (i) la *Solicitud de Sentencia Sumaria* presentada por **ELA** cumple a cabalidad con los requisitos de forma estatuidos en la Regla 36 de las de Procedimiento Civil de 2009, *supra*; y (ii) la *Oposición a que se Dicte Sentencia Sumaria* presentada por la **Sucesión Rivera Quiñones no** cumple con los requisitos de forma de una oposición estatuidos en la Regla 36 de las de Procedimiento Civil de 2009, *supra*. Ello no dispone sin más de la controversia ante nuestra consideración.

---

[62] *Cruz, López v. Casa Bella y otros*, 213 DPR 980 (2024).

Al revisar la totalidad del expediente judicial, este revela que el foro recurrido aplicó correctamente la Regla 36 de las de Procedimiento Civil de 2009. En ese sentido, determinó los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial pero no hizo alusión a aquellos que están en disputa. En consecuencia, acogemos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial (no controvertidos).

Es nuestro deber escrutar si el foro de instancia aplicó correctamente el derecho al asunto que nos ocupa. Resolvemos en la afirmativa. En la *Petición,* se adujo que "[e]l fin público para el cual se interesa la adquisición de la propiedad objeto de este procedimiento es para mejorar las condiciones socio-económicas de la Comunidad Especial Chicharro Seburuco, así como para fomentar el desarrollo económico y crear empleos". Pese a ello, es un hecho incontrovertido que en el caso K-AC2009-1153, el **ELA** se comprometió mediante un acuerdo transaccional a adquirir el predio por compraventa o expropiación con el propósito de traspasarle la titularidad a CBE, una entidad privada. En definitiva, colegimos que el tribunal primario no erró ni abusó de su discreción, cometió perjuicio o error manifiesto al declarar no ha lugar la *Solicitud de Sentencia Sumaria* presentada el 23 de marzo de 2023 por el **ELA** toda vez que su determinación es esencialmente correcta y encontró fundamento en los documentos que obran en el expediente judicial. En conclusión, **no** se incidió en el error señalado.

- IV -

Por los fundamentos antes expuestos, ***confirmamos*** la *Sentencia Parcial* prescrita el 31 de julio de 2023 por el Tribunal de Primera Instancia, Sala Superior de San Juan; y ***devolvemos*** el caso a la consideración del foro apelado para que dicte la *Sentencia* final conforme a lo aquí resuelto.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones